UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES COBURN, | ) | CASE NO.1:04CV682 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| ROCKWELL AUTOMATION, INC., | ) | MEMORANDUM AND OPINION |
| ET AL., | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Rockwell Automation, Inc. and Rockwell Software, Inc. ("Rockwell") Motion for Summary Judgment (ECF Dkt # 35). For the following reasons, the Court grants Defendants' Motion..

## PROCEDURAL HISTORY

Plaintiff's Complaint, originally filed in Cuyahoga County Court of Common Pleas, alleges he was employed by Defendants from December 1979 to September 29, 2003, and was wrongfully terminated from his position with Defendants because of his age, in violation of Ohio Revised Code §4112 and Ohio's public policy.

1

### Plaintiff's Arguments

Plaintiff was employed by Defendant Rockwell Automation, Inc. from 1979 to 1998.  In 1998, Plaintiff was transferred to Rockwell's newly acquired company, Rockwell Software, Inc. Rockwell Software was led by Richard Ryan.  Plaintiff alleges Ryan: openly discussed Rockwell's need to appeal to younger workers; amended Rockwell's benefits package to appeal to younger prospective employees; repeatedly discussed Plaintiff's retirement with Plaintiff, fired seven employees, six of whom were over the age of forty; and fired Plaintiff at a time when Rockwell planned to hire twenty-three new employees and planned to hire eighty-six new employees within three months.

Plaintiff rose to the position of Business Unit Leader and Director for Rockwell Software and worked on a computer software project which computer-simulated the operation of machine tools, allowing customers to test the performance of the tools before incurring the costs of building them.  Plaintiff was the primary contact with Ford Motor Company ("Ford"), a customer of the project.

Plaintiff contends Ryan wanted Rockwell Software to compete with the "dot.com" companies.  In order to attract younger employees, Ryan implemented a more casual atmosphere at Rockwell.  Allegedly, Ryan told John Beatty, at the time head of Human Resources at Rockwell Software, he did not want to employ old, tired programmers at Rockwell. Plaintiff testifies Ryan told him he wanted Plaintiff to retire. Allegedly, Ryan told Tim Reckinger, Plaintiff's supervisor, he wanted to eliminate Plaintiff.

Plaintiff, then fifty-five years old, was terminated by Defendant Rockwell Software in

2

September of 2003, along with seven other employees, six of whom were over the age of forty. Plaintiff alleges his replacements were thirteen years younger and sixteen years younger. Plaintiff alleges Ryan discussed with Ford eliminating Plaintiff in 2002 and Ford expressed displeasure, forcing Ryan to reconsider his decision. Plaintiff alleges this evidence, provided in deposition by Tim Reckinger, proves an intent to fire Plaintiff well before the Reduction in Force, raising a genuine issue of fact that the Reduction in Force ("RIF") was pretextual. Also, Plaintiff alleges discrepancies amongst management at Rockwell as to who made the determination to include Plaintiff in the layoffs demonstrate his firing pursuant to the RIF was mere pretext.

Plaintiff also argues at least two younger employees were offered other positions within Rockwell when their positions were eliminated, one hired at the same time as Plaintiff.

Plaintiff alleges his termination violated Defendants own policies and practices, citing to Rockwell Automation's Reduction in Work Force Plan. The policy states that "generally" temporary employees will be the first cut. No temporary employees were terminated in the RIF that resulted in Plaintiff's termination.

Finally, Plaintiff alleges his skills, qualifications, work performance and the performance of the computer-simulated product were never considered in the decision to terminate his employment. Plaintiff alleges he was told by management he was being let go because Rockwell was tired of letting young engineers go and they were going after a group of older employees.

### Defendants Argument

Defendants contend Plaintiff was an at-will employee whose position was terminated pursuant to a RIF brought on by a budget shortfall. At the time of his termination, Plaintiff was

3

Director of Application Programs and Plaintiff worked as a project manager on a joint development program with Ford.

In 2001, Ryan, Rockwell Software's President, informed Plaintiff business conditions warranted the termination of Plaintiff's project. This shutdown would also necessitate the termination of Plaintiff's position and the positions of those working for Plaintiff on the computer-simulated project. However, after meeting with representatives of Ford, and after Ford agreed to provide additional funding for Plaintiff's project, the project was not terminated.

In conjunction with discussions on shutting down Plaintiff's project, Ryan also discussed retirement with Plaintiff. The retirement discussions involved the types of benefits available to Plaintiff. There was some question about benefits, as Plaintiff had been a long time employee of Rockwell Automation prior to his transfer to Rockwell Software in 1998. The last retirement discussion was held in June of 2002, at which time Ryan took Plaintiff's retirement off the table.

In August/September of 2003, Rockwell Software's Annual Operating Budget revealed a budget gap of approximately 1.7 million dollars. The budget gap was reviewed by Ryan, Ralph Kappelhoff, Ralph Lalone, Lawrence Brown, and Brandon Ekberg on September 12, 2003. They discussed different methods of reducing the gap, but ultimately determined a reduction in force was necessary to close the gap. Rockwell Software conducted its own RIF and determined seven employees would need to be cut. According to Defendants, Plaintiff's inclusion in the RIF did not significantly impact the continuity of Rockwell Software's business.

Ralph Kappelhoff asked Tim Reckinger to review Plaintiff's program. After the review it was determined, pursuant to legal concerns over contractual obligations with Ford, only the marketing portion of Plaintiff's project would be cut. According to Defendants, Plaintiff's duties

4

involved marketing of the computer-simulated project. After Plaintiff's termination, his duties were divided amongst several employees, namely, Tim Reckinger (age 44), Myron Shawala (age 33), Suddhi Bangalore (age 39), Felicia Moore (age 44), and Steve Zink (age 45). The six other employees whose positions were terminated were ages 45. 46, 47, 43, 43 and 34. Plaintiff's termination included a severance package worth approximately Fifty-Four Thousand dollars.

Though Plaintiff allegedly applied for three positions at Rockwell, there is no record of a third application for an open position. Plaintiff was not hired for the Software Manager position because, according to hiring manager Mary McDonald. Plaintiff did not have the desired experience working with salespersons and customers. In addition, Ms. McDonald testified Plaintiff had "integrity issues" based on an incident Ms. McDonald had with Plaintiff when the two worked together.

Plaintiff was not hired for the Software Manager position because the hiring manager, Wiley Wolfe, was not aware Plaintiff had applied. The position ultimately went to a forty-three year old male.

Finally, Plaintiff never formally applied for the Director of Programs for Enterprise Controls position and therefore, was not considered.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

5

*Inc.*, 447 U.S. 242, 248 (1986).  An opponent of a motion for summary judgment may not rely on

the mere allegations of the complaint, but must set forth specific facts showing a genuine issue

for trial.  *Id.*  When no reasonable jury could return a verdict for the non-moving party, no

genuine issue exists for trial.  *Id.*  However, in evaluating a motion for summary judgment, the

court must draw all inferences from the facts in the light most favorable to the non-moving party.

*Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

### OHIO REVISED CODE §4112.02

Plaintiff's Complaint alleges age discrimination in violation of O.R.C. 4112.02

subchapters (A) and (N).

O.R.C. §4112.02:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of race, color, religion, sex, national origin, disability, age or
ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to
discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of
employment, or any matter directly or indirectly related to employment.

(N) An aggrieved individual may enforce the individual's rights relative to discrimination on the
basis of age as provided for in this section by instituting a civil action, within one hundred eighty
days after the alleged unlawful discriminatory practice occurred, in any court with jurisdiction for
any legal or equitable relief that will effectuate the individual's rights.
A person who files a civil action under this division is barred, with respect to the practices
complained of, from instituting a civil action under section 4112.14 of the Revised Code and
from filing a charge with the commission under section 4112.05 of the Revised Code.

Age discrimination claims under O.R.C. § 4112.02 are analyzed using the framework

established by federal case law under Title VII and the Age Discrimination in Employment Act

(ADEA).  *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582. (1996); see also *Kohmescher v.

Kroger Co.*, 61 Ohio St.3d 501, (1991), syllabus; *Weller v. Titanium Metals Corp.*, 361 F.

6

Supp.2d 712, 716 (S.D. Ohio 2005).

Discrimination in violation of O.R.C. §4112 may be established by direct evidence of age discrimination. *Kohmescher, supra.* Direct evidence is evidence that "rises to the level of actually proving discrimination." *Mauzy* at 586. Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994).

Absent direct evidence of age discrimination, proof of discriminatory intent is subject to a burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *Mauzy* at 587. To establish a prima facie case of age discrimination in an employment discharge action, the plaintiff-employee must demonstrate that he or she (1) was a member of a statutorily protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced by, or the discharge permitted retention of, a person of substantially younger age." *Coryell v. Bank One Trust Co.,* 101 Ohio St.3d 175, (2004). "The term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." *Id.* In reduction in force cases the fourth element is modified to require the plaintiff to offer evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. *Rowan v. Lockheed Martin Energy Systems, Inc.,* 360 F.3d 544, 547 (6th Cir. 2004), see also *Ramacciato v. Argo-Tech Corp.,* No. 84557, 2005-Ohio-506, 2005 WL 315377 ¶29 (additional, direct, circumstantial, or statistical evidence tending to indicate that defendant singled plaintiff out for impermissible reasons).

If the employee can establish a prima facie case by a preponderance of the evidence, the

7

burden of production shifts to the employer to articulate a legitimate. nondiscriminatory reason

for the adverse employment action. *Weller* at 716, citing *Mauzy* at 582. If the employer

articulates such a nondiscriminatory reason, then the presumption of discrimination raised by the

prima facie case is rebutted, and the employee's burden is to prove that the employer's articulated

reason for the discharge is only a pretext for discrimination. *Weller* at 716, *citing Mauzy* at 582.

### DIRECT EVIDENCE OF DISCRIMINATION

Plaintiff contends he was told by his supervisor Tim Reckinger, that another supervisor,

Brandon Ekberg, was responsible for terminating Plaintiff's employment because he (Ekberg) "

was tired of letting young talented engineers go and he was going to go after the group of us."

(Coburn depo. pg. 94). Also. Rockwell Software's President, Ryan, stated in various meetings

he wanted to attract and keep younger employees, and designed the benefits to attract younger

workers. Furthermore, Plaintiff testified Ryan implemented a culture at Rockwell Software

designed to attract younger workers. Specifically, Rockwell Software allowed casual dress

including shorts and tank tops. Also, on several occasions Ryan questioned Plaintiff on his

intention to retire and told him in 2001 he was shutting down Plaintiff's program for business

reasons but would allow Plaintiff to retire. Finally, Plaintiff alleges Rockwell's refusal to contact

or interview Plaintiff for other positions when it was company policy to give preferential hiring

considerations to former qualified employees, evidences age discrimination.

The Court finds the above statements and evidence do not rise to the level of direct

evidence but require an inferential interpretation. Brandon Ekberg's alleged statement "he was

going to go after the group of us" does not. on its face, indicate who constitutes "the group of

us." Any number of reasonable interpretations (managers, the project team, non-engineers, etc...)

involve non-discriminatory meanings. Defendants contend the alleged Ekberg statement is also double hearsay and may not be considered. However, as both Ekberg's original statement and Reckinger's relaying of the statement are, in themselves, admissions by party opponents, they are not considered hearsay under Fed. R. Evid. 802(d)(2), as there are factual issues whether Ekberg and Reckinger were involved in the decision to terminate Plaintiff's employment. The Defendants deny making these statements and Plaintiff's brief does not accurately reflect Plaintiff's deposition testimony. Plaintiff's Brief in Opposition states, "management specifically told Coburn he was being let go because the company was tired of letting young engineers go and they were going after a group of older employees." (Brief at 14). Though not encompassed in quotation marks, the statement management specifically told Coburn "they were going after a group of older employees" is misleading, in that Coburn's actual deposition testimony in no way states "group of older employees" but rather states, "the group of us."

Plaintiff cites to *Woythal v. Tex-TenCorp.*, 112 F.3d 243. (6th Cir. 1997) for the proposition that comments made to Plaintiff by management regarding his retirement are direct evidence of age discrimination. However, Woythal's claims were analyzed under the *McDonnell Douglas* burden shifting paradigm and held, "a supervisor's pressure and constant questioning of an older employee about retirement is sufficient to raise an inference of discriminatory intent to defeat a motion for summary judgment." As evidence requiring inference is not direct evidence, Plaintiff's discussions with Ryan about retirement are not sufficient to establish direct evidence of discrimination sufficient to dispense with the *McDonnell Douglas* analysis.

Furthermore, Plaintiff argues Rockwell's refusal to allow him to transfer while permitting other younger employees to do so is direct evidence of discrimination. Again, such evidence

9

requires the Court make an additional inferential analysis, as there are many proffered non-discriminatory reasons for transferring one employee and not another. This evidence does not rise to the level of direct evidence.

The Court finds that general statements by management regarding the need for younger workers with a culture and a benefits system designed to appeal to younger employees, do not constitute direct evidence of age discrimination but require the Court to make inferences of discrimination. See generally, *Rowan* at 548. The Court, therefore, finds the evidence as presented does not satisfy the direct evidence standard and is more appropriately analyzed under the *McDonnell Douglas* analysis.

## MCDONNELL-DOUGLAS ANALYSIS

Under the first element of a prima facie age discrimination claim. Defendants do not dispute Plaintiff is a member of a protected class.

Under the second requirement of a prima facie age discrimination claim, Plaintiff must offer evidence he was subjected to an adverse employment action. Again, Defendants do not contest Plaintiff suffered an adverse employment action.

Under the third requirement of a prima facie age discrimination claim, the Defendants do not contest Plaintiff was qualified for the position.

Defendants do contest the fourth element of *McDonnell Douglas*, that Plaintiff was replaced by, or the discharge permitted the retention of, a person of substantially younger age and was singled out for impermissible reasons. Defendants contend the elimination of Plaintiff's position was due to a reduction in force based on legitimate business reasons (i.e. the budget gap). Also, Defendants argue Plaintiff's position was not given to a younger person; rather,

10

many of his duties were absorbed by several employees (over 40 years of age) or eliminated altogether.

The burden of establishing a prima facie case under *McDonnell Douglas* is not onerous. *Texas Dept. Of Comm. Affairs v. Burdine,* 450 U.S. 248, 251 (1981). The burden of establishing a prima facie case of age discrimination under *McDonnell Douglas* is "a burden easily met." *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].' " *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660 (6th Cir 2000), *Hollins v. Atlantic Co.,* 188 F.3d 652, 659 (6th Cir.1999)(quoting *Burdine,* 450 U.S. at 253-54). It is "only the first stage of proof in a Title VII case," and its purpose is simply to "force [a] defendant to proceed with its case." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861-62 (6th Cir.1997). Its purpose is to "bring the litigants and the court expeditiously and fairly to the ultimate question." *Burdine,* 450 U.S. at 253.

In light of the "easily met" burden in establishing a prima facie case, the Court finds Plaintiff has met his burden of establishing a prima facie case of age discrimination. Defendants do not contest Plaintiff was a member of a protected class, suffered an adverse employment action and was well qualified for the position. In turning to the fourth element in a reduction-in-force case, the Court finds Plaintiff has provided sufficient, though rebuttable, evidence to infer, in the prima facie stage, Plaintiff was singled out for an impermissible reason. Plaintiff contends his termination permitted the retention of younger employees. Specifically, his duties were assumed by Tim Reckinger, age 42 and Suddhi Bangalore, age 39. Plaintiff's deposition testimony that the comments by Defendant Rockwell Software's representatives indicated a

11

desire to terminate Plaintiff due to his age, coupled with alleged statements by Ryan that the company should look to young employees, weigh in favor of finding the prima facie burden has been met. Also, the apparent difficulty in establishing who recommended Plaintiffs termination and factual issues of the revenue generated by Plaintiff's project, all weigh in favor of finding Plaintiff has met his prima facie burden.

**NON-DISCRIMINATORY REASON**

The burden now shifts to Defendants "to articulate a legitimate. non-retaliatory explanation for the adverse employment action". *Mauzy at 582*. To meet their burden. Defendants "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine* 450 U.S. at 257. "The burden that shifts to the defendant, therefore, is to rebu: the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24. 25 (1978): "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine* at 254. "To accomplish this. the defendant must clearly set forth. through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a

12

legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255-256.

The Court finds Defendants have satisfied their burden of articulating a legitimate non-discriminatory reason for Plaintiff's termination.  Defendants have offered deposition testimony demonstrating a budget shortfall requiring cuts in labor.  Defendants have also offered evidence they considered other methods of cost cutting to close the budget gap without making the job cuts.  Also, the fact that six other employees, all younger than Plaintiff, were cut as part of the reduction in force demonstrates, at the articulation phase of *McDonnell Douglas* analysis, Plaintiff was not singled out for discrimination but was part of a broader business decision to terminate positions to reduce cost.  Defendants could not entirely end Plaintiff's project with Ford without legal exposure, however, it was determined they could cut the marketing end of the project for which Plaintiff was responsible.

### PRETEXT

To demonstrate Defendants' articulated non-discriminatory reason for the adverse employment action is mere pretext, Plaintiff must show, by a preponderance of the evidence, that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Manzer* 29 F.3d at 1084.  "Under the first and third methods of showing pretext, the fact finder may infer discrimination from the circumstances.  Under the second method. [the plaintiff] may not rely exclusively on his prima facie evidence but instead must introduce some further evidence of discrimination." *Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579. 589 (6th Cir. 2002).

"Courts have recognized that in discrimination and retaliation cases, an employer's true

13

motivations are particularly difficult to ascertain," *Singfield v. Akron Metropolitan Housing Authority, et al.,* 389 F.3d 555, 564, quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983). ( "There will seldom be 'eyewitness' testimony as to the employer's mental processes"). "They have concluded that once a prima facie case is established either by the introduction of direct evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'" *Id.,* quoting *Burdine,* 450 U.S. at 255. "

However, when the defendant, "fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption 'drops from the case' and 'the factual inquiry proceeds to a new level of specificity. " *Aikens* at 714-15. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.' ... In other words, '[i]t is not enough ... to *dis* believe the employer: the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Selwyn v. White,* 409 F. Supp.2d 958, 974 (M.D. Tenn. 2006) quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519 (1993).

Under the first and third methods of proving pretext, Plaintiff must show Defendants proffered reason for terminating Plaintiff has no basis in fact or was insufficient to warrant the challenged conduct. Plaintiff has failed to meet his burden. To demonstrate there was no basis

14

in fact for Defendants decision requires evidence, "that the reasons given by the employer simply did not happen." *Weller* 361 F. Supp.2d at 720. It is undisputed that the RIF did occur and the marketing end of the project headed by Plaintiff, was eliminated. Without evidence to challenge the existence of a budget shortfall or evidence that the subsequent RIF failed to rectify the shortfall, Plaintiff cannot establish Plaintiff's termination for budgetary reasons had no basis in fact and did not warrant his termination. The Court finds that the second method of proving pretext, that the proffered reason did not actually motivate the defendant's challenged conduct, warrants a more detailed examination.

### Revenue of Plaintiff's Project

Plaintiff has offered no evidence to contradict Defendants' testimony that a budget shortfall existed, nor that Rockwell Software was required to bring its expenses within the budget. Plaintiff's only evidence on this issue involves the success of Plaintiff's program and the apparent mistake or alleged intentional misinformation in the amount of revenue generated by Plaintiff's project. Plaintiff alleges Tim Reckinger, Plaintiff's immediate supervisor at the time of his termination, provided inaccurate data on the revenue generated by Plaintiff's project to John McDermott, Ryan's supervisor. The information was provided McDermott per his request, as Ford expressed some concern over the termination of Plaintiff. Reckinger's email of October 9, 2003, to John McDermott lists the total CPS (program Plaintiff headed in 2001) revenue for three years prior to Plaintiff's termination at $700,000. Ford's representative, Joe Walacavage, stated Ford paid over $1.8 million to Rockwell for Plaintiff's project during Plaintiff's term. The Court finds that the reliance on revenue numbers, whether mistaken or not, is not relevant, as the data included was not provided to John McDermott until after Plaintiff's termination. Further,

15

there is no evidence it was provided to the decision makers or influenced the decision makers when deciding Plaintiff's termination.

**Plaintiff's Retirement**

Plaintiff contends, in fall of 2001, Ryan told him he wanted Plaintiff to retire. The context of this conversation involved Ryan's intent to shut down the project with Ford. Plaintiff testified Ryan wanted to shut down the program, which would have involved the termination of not only Plaintiff, but also the four individuals who worked under him. These individuals ranged in age from the mid-30s to 40's. According to Plaintiff, Ryan said he would arrange for Plaintiff to retire and the company would bridge his retirement benefits until he was 55. Plaintiff was 53 at the time. Ryan told Plaintiff the decision to terminate Plaintiff's project was due to "business conditions." Approximately one month later, after meeting with Ford's representatives and after Ford provided additional funding for the project, Rockwell decided not to terminate Plaintiff's project.

As there were legitimate concerns over what retirements benefits Plaintiff would be entitled to, Ryan had Rockwell's Human Resources Department determine Plaintiff's retirement benefits. Once that was determined, Ryan had no further conversations with Plaintiff on retirement except for a statement by Ryan to Plaintiff asking, "now that you know you can retire, when will you be retiring?" Plaintiff admits Ryan asked it "jokingly." After the decision to maintain the Ford contract, Ryan never discussed wanting Plaintiff to retire.

The Court finds these discussions do not amount to evidence sufficient to rebut Defendants' non-discriminatory reason for terminating Plaintiff's employment. Discussions on what retirement benefits Plaintiff may be entitled to do not constitute evidence of age

16

discrimination. The conversation between Plaintiff and Ryan evidences an intention to shut down Plaintiff's program as a whole and does not evidence an attempt to single out Plaintiff due to his age. Ryan indicated in 2001 the desire to shut down the project was due to business conditions and Plaintiff understood that to mean terminating the employment of his entire team, all of whom were younger than Plaintiff. Ryan's alleged discussion with Plaintiff on retirement evidences an attempt to help Plaintiff obtain retirement benefits rather than outright termination. Nothing about the retirement statement or subsequent discussions evidence an improper discriminatory animus. Also, their temporal proximity to Plaintiff's ultimate termination is remote, as Plaintiff concedes Ryan did not discuss wanting Plaintiff to retire after October 2001, nearly two years prior to Plaintiff's termination.

**Brandon Ekberg Comments**

Allegedly, Brandon Ekberg told Tim Reckinger, "he was tired of letting young talented engineers go and he was going to go after the group of us." The Court finds, in keeping with the Sixth Circuit case law, "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). There is simply no way to determine who Ekberg was referring to when he decided to go after the "group of us". Such ambiguity without further elucidation does not provide the Court with evidence to infer age discrimination. Again, the remaining employees terminated as part of the RIF were substantially younger than Plaintiff.

**Who Placed Plaintiff on the RIF List**

There is a puzzling inability by Defendants to determine who included Plaintiff's name for consideration on the RIF list. Defendants' Fed. R. Civ. P. 30 (B)(6) representative Ralph

17

Lalone stated Brandon Ekberg identified Plaintiff as a person to be included on the RIF list. This is supported by Plaintiff's testimony, although Ekberg denies including Plaintiff on the list. Ryan states he approved the decision to include Plaintiff in the RIF, but it was a staff decision. Regardless. Ryan was the person with ultimate authority to terminate Plaintiff's employment and did so.

The Court finds these facts problematic, in that it presents some difficulty in determining the reason for Plaintiff's inclusion in the RIF. Furthermore, there does not appear to be any paper trail of the factors used to determine who was included in the RIF. In fact. there is some factual dispute by Defendants over who prepared the elusive risk assessment report used to determine inclusion in the RIF. However, there is no dispute that Ryan ultimately approved including Plaintiff in the RIF and the confusion over who included Plaintiff on the list or the absence of a risk assessment document does not rebut Defendants' assertion that the decision was based on an assessment of business conditions. Though there is repeated deposition testimony on the business decision to terminate Plaintiff's employment, the lack of documentary support for the findings of the RIF is the most troubling aspect of this case and gives the greatest pause. This raises a serious question on the factual basis for Plaintiff's termination and the Court carefully considered this issue. However, the evidence presented by Plaintiff did not raise a genuine issue of fact sufficient to rebut the testimony of the decision makers in deciding to terminate Plaintiff's position due to budgetary concerns.

**The Culture of Age Discrimination**

Plaintiff contends Rockwell Software's policies, as shaped by Ryan, reflect a discriminatory bias against older employees. First, the benefits package was designed to attract

18

younger employees, providing bonuses as opposed to more long term benefits. Second, the company's dress code was relaxed to attract younger employees. Ryan allegedly made statements that Rockwell Software needed to find ways to keep younger employees from leaving the company and needed to focus on hiring younger employees coming from newer markets. The deposition pages cited by Plaintiff only reflect the relaxed dress code, not any reason behind it. Ryan admits to providing input in the benefits plan but denies shaping and designing the benefits plan. Plaintiff testified Ryan stated in meetings that a software company should look young and aggressive and he wanted to hire and attract young talented engineers by paying them a lot of money up front and not place as much import on long term benefits. Plaintiff states this was conveyed to him in some early staff meetings, again raising issues on their temporal relation to his firing. This was to make Rockwell Software more competitive with the "dot.com" companies in attracting younger engineers. Ryan does not recall making these statements. As Plaintiff was transferred to Rockwell Software in 1998, those statements could have been made in 1998, five years prior to his firing.

The John Beatty affidavit quotes Ryan as stating he was tired of employing old, tired programmers and younger employees had better ideas and were more current. Ryan also reportedly told Beatty they had to find ways of keeping younger employees from leaving the Company. Ryan did not want Beatty to recruit older workers from machine tool shops and PLCs, but to focus on younger employees from newer markets. The problem with Beatty's affidavit is Beatty was head of Human Resources for Rockwell from 1994-1996, nearly two years prior to the date Plaintiff was transferred to Rockwell Software and seven years prior to Plaintiff's termination. His testimony would appear to have limited relevance for determining

19

discriminatory animus as a motivating factor in Plaintiff's termination. This Court is required to examine the purpose, content and temporal connection between Beatty's statements and the challenged employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998). The temporal connection is too remote to be considered relevant by this Court.

**The Seven Employees Fired in the RIF**

Plaintiff contends additional evidence of age discrimination exists because six of the seven employees fired in the RIF were over age 40. The ages of the seven individuals were, Plaintiff (55), then 45, 46, 47, 43, 43, 34. As six of the seven were over 40 and, therefore, in the protected class for age discrimination, this demonstrates discriminatory animus against older employees. Defendants argue Plaintiff's case is based on his duties after termination being given to two employees, ages 42 and 39. Controlling Sixth Circuit law holds that an age difference six years or less is not significant. *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003). Tim Reckinger took over Plaintiff's duties upon Plaintiff's termination. Reckinger, age 42, and Steven Zink, age 45, were given Plaintiff's duties. Later Suddhi Bangalore, age 39, was given some of Plaintiff's duties. Although Reckinger's and Zink's ages put them in the protected class, recent case law allows age discrimination claims to proceed when the replacement is substantially younger. Under *Grosjean*, any age difference of more than six years is significant. Therefore, Reckinger and Zink may be considered substantially younger than Plaintiff. Defendant argues the converse must, therefore, be true in that all the other employees terminated in the RIF were substantially younger than Plaintiff and constitute evidence that age was not a factor. The Court finds Defendants' argument particularly compelling. All the other employees terminated in the RIF with Plaintiff were, by the Sixth Circuits own definitions, significantly

20

younger than Plaintiff and do not evidence a singling out of Plaintiff for discriminatory reasons.

**Plaintiff was not Permitted to Transfer**

Plaintiff contends he was unable to transfer while similarly situated younger employees were able to transfer to other positions within Rockwell. Plaintiff cites to two employees, Pat Babington and Felicia Moore. Babington and Moore were nine years and eighteen years younger than Plaintiff, respectively, but were permitted to transfer. Plaintiff alleges both employees' positions were eliminated, yet they were given open positions elsewhere in the company. In *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241. 1246 (6th Cir. 1995), the Sixth Circuit held, regarding the *McDonnell Douglas* burden shifting paradigm. "the fourth element may also be satisfied by showing that the defendant unlawfully discriminated against the plaintiff by showing that similarly situated non-protected employees were treated more favorably."

Defendants argue these employees were not similarly situated to Plaintiff and any comparison is inappropriate under Sixth Circuit law. Babington was a vice president of customer support for a separate Rockwell business unit. She reported directly to John McDermott, Richard Ryan's supervisor, and her position was eliminated under a reorganization in 2004, not due to an RIF. According to the Rockwell hierarchy, Babington's position grade was one level above Plaintiff's. Nor was Babington's position eliminated at the same time by the same people as Plaintiff's. Finally, Babington was age 47 at the time and a member of the protected class.

Felicia Moore, age 44 (also a member of the protected class), absorbed some of Plaintiff's duties after the September 2003 RIF. She was not part of the 2003 RIF but was allowed to transfer nearly seven or eight years prior to the RIF. There is no evidence her original position was going to be eliminated. The evidence is sparse as to Moore's job title, duties, position and

21

the reasons for her transfer.

"An employer is under no obligation to transfer an employee whose position has been eliminated, but the ADEA is violated if other displaced employees are transferred and the plaintiff is not due to his age." *Ercegovich* at 351.   Plaintiff testifies it was common practice for performing employees to be permitted to transfer however, this testimony is contradicted by John McDermott, who states there was no such policy.   Finally, there is no evidence of a written policy regarding transfers.

The Sixth Circuit has established two lines of cases regarding similarly situated employees.   In one, "plaintiff must show that the comparables are similarly-situated in all respects...Thus, to be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 599 (6h Cir. 2001).

In another line of cases, the Sixth Circuit has held a plaintiff need not show exact correlation in all respects but rather must show similarity in "all of the relevant aspects." *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005).

The Court finds Pat Babington was not a similarly situated employee under either test. She was not the same grade level and did not report to the same supervisor.   The Court has no evidence to make a determination that Felicia Moore was similar in any relevant aspect to Plaintiff and her transfer occurred seven to eight years prior to Plaintiff's termination. Furthermore, the evidence demonstrates that only a portion of her entire duties were eliminated.

22

Therefore, the Court finds Plaintiff has failed to demonstrate disparate treatment of similarly situated employees.

Plaintiff also alleges he was not considered for other positions within Rockwell for which he was qualified. He alleges he was told by Rockwell's HR department he would be considered for other openings within the company and would be given preferential treatment. This is in keeping with testimony (disputed) from an in-house recruiter at Rockwell that well-performing employees are given preferences for openings within the company. Furthermore, the HR department allegedly told Plaintiff as openings came up they would contact him. According to Plaintiff, they never did.

Plaintiff applied for two positions for program managers in November 2003. Position number 781BR was eventually filled by an external candidate in his early thirties. Position number 1300BR was filled by an internal candidate in his early forties (The Court notes some apparent confusion as to who was hired in what position. Defendants' interrogatory answers say a Mr. Campbell was hired for the 781BR position but depositions say he was hired for the 1300 position.) The hiring manager for position 1300BR states she did not hire Plaintiff because he lacked qualifications and she had "integrity issues" with Plaintiff on a prior program they worked together on. The hiring manager for the other position Plaintiff applied for was unaware Plaintiff applied for it. However, there is no evidence Plaintiff was not considered due to his age, other than the two eventual hires were younger.

In the absence of evidence those employees permitted to transfer were similarly situated to Plaintiff, and in light of *Ercegovich*, the Court finds Plaintiff was not discriminatorily denied positions elsewhere in Rockwell. "The isolated fact that a younger person eventually replaces an

23

older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986).

**The RIF violated Rockwell Policy**

Plaintiff offers as evidence the Rockwell policy on RIF terminations. Titled the "Reduction in Force Severance Plan," the document states, "temporary service employees generally will be the first to be affected by a reduction in force. No temporary workers were cut in the 2003 RIF. As Defendants point out, the plain language of the policy is "generally" temporary service workers will be cut. As this language does not evidence a hard and fast policy, it is of little probative value. Furthermore, Plaintiff cannot demonstrate cutting lesser paid temporary workers would have had any meaningful impact on the budget deficit.

**Rockwell Planned on Hiring More Employees**

Plaintiff alleges that Rockwell hired or intended to hire over one hundred new employees within months of Plaintiff's termination. This evidence is of little probative value as to why Plaintiff was not permitted to transfer for two reasons: (1) Plaintiff fails to compare similarly situated employees, and (2) those employees terminated in the RIF, including younger employees, were not rehired.

## OHIO PUBLIC POLICY CLAIM

"A claim for wrongful discharge in violation of public policy embodied in statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Weller* at 724, citing *Howard v. Contech Construction Prods., Inc.,* Case No.CA2003-01-018, 2003 WL 22887954 *7 (Ohio App. Butler Co. Dec. 8, 2003). Therefore, as Plaintiff has failed to prove the underlying statutory violation, he cannot maintain as a matter of law his claim for violation of

24

Ohio public policy.

## CONCLUSION

In reviewing this case, there is a lot of circumstantial and speculative evidence that does not rise, to a genuine issue of fact to support Plaintiff's claims of discriminatory termination based on age. The comparable employees were not similarly situated and the other employees cut in the RIF were substantially younger than Plaintiff. Plaintiff has failed to establish evidence that he was singled out for termination based on his age.

Therefore, the Court finds Plaintiff has failed to demonstrate any genuine issues of material fact on his claims under O.R.C. §4112 and Ohio public policy. Summary judgment is granted for Defendants and against Plaintiff.

IT IS SO ORDERED.

4|11|06
Date

CHRISTOPHER A. BOYKO
United States District Judge

25